**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

C.K. LEE,
*on behalf of himself and others similarly situated*,

             Plaintiff,

                v.

UDR, INC., COLUMBUS SQUARE 808, LLC,
COLUMBUS SQUARE 795, LLC, COLUMBUS
SQUARE 775, LLC, COLUMBUS SQUARE 801,
LLC, and COLUMBUS SQUARE 805, LLC,

             Defendants.

_____

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff C.K. LEE (herein "Plaintiff LEE" or "Plaintiff"), individually and on behalf of all other

persons similarly situated, by his undersigned attorneys, files this Class Action Complaint against

Defendants UDR, INC., COLUMBUS SQUARE 808, LLC, COLUMBUS SQUARE 795, LLC,

COLUMBUS SQUARE 775, LLC, COLUMBUS SQUARE 801, LLC, and COLUMBUS

SQUARE 805, LLC (collectively, "Defendants") and alleges the following:

## NATURE OF THE ACTION

    1.      This is a consumer protection and breach of contract action seeking redress for, and

a stop to, Defendants' unfair and deceptive practices of advertising and marketing of their

apartments located at 808, 795, 775, 801, and 805 Columbus Avenue in Manhattan, all of which are owned by Defendant UDR, INC. Apartments in these buildings are advertised as including daylong access to a swimming pool located at 808 Columbus Avenue.  But residents are in fact deprived of such access because the pool is rented out to non-residents for a substantial part of the day—and during hours when many residents, and most child residents, could most readily avail themselves of the pool.

2.      Defendants therefore aggrandize themselves through the fees charged to non-residents by violating the promises they made to residents when inducing them to sign a lease.

3.      Plaintiff brings this class action on behalf of all resident leaseholders of 808, 795, 775, 801, and 805 Columbus Avenue and alleges violations of New York General Business Law § 349 (Deceptive Trade Practices Act) and New York General Business Law § 350 (False Advertising Law), common law fraud, breach of contract, and unjust enrichment.  Defendants' misrepresentations substantially induced, or were material to, Class members' decision to rent an apartment from Defendants, but Class members were deprived of the benefit of their bargains when Defendants decided to reduce their access to the pool in order to collect fees from third-party non-resident swimming groups.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), wherein: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

5.      As shown above, the amount-in-controversy requirement is readily met.  Defendant UDR is an out-of-state corporation, and some former Columbus Square residents have since left Columbus Square and moved out of state. Thus, minimal diversity is satisfied.

6.      The Court has personal jurisdiction over Defendants engaged in the wrongdoings alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, thereby rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Defendants' activity within New York State are substantial and not isolated.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

*Plaintiff*

8.      Plaintiff LEE is, and at all times relevant hereto has been, a citizen of New York and a resident of New York County. He rents an apartment in one of the buildings referenced in ¶ 1 above.

*Defendants*

9.      Defendant UDR, INC. ("UDR") describes itself as "focused on providing distinctive, high-quality apartment homes paired with exemplary service and amenities."  It has been in business for over 45 years and advertises that its "apartment communities are situated in some of the country's most desirable locations, from New York's Upper West Side to San

Francisco's Mission Bay District."[1] UDR is organized under the laws of the State of Maryland and its principal place of business is located at 1745 Shea Center Drive, Suite 200, Highlands Ranch, CO 80129.  Its address for service of process is CT Corporation System, 7700 E. Arapahoe Rd. Ste. 220, Centennial, CO 80112-1268.

10.     Defendant Columbus Square 808 LLC is UDR's operating company for the building it owns at 808 Columbus Avenue, New York, NY 10025.  It is organized under the laws of the State of Delaware and has an address for service of process located at CT Corporation System, 28 Liberty St., New York, NY 10005.

11.     Defendant Columbus Square 775 LLC is UDR's operating company for the building it owns at 775 Columbus Avenue, New York, NY 10025.  It is organized under the laws of the State of Delaware and has an address for service of process located at CT Corporation System, 28 Liberty St., New York, NY 10005.

12.     Defendant Columbus Square 795 LLC is UDR's operating company for the building it owns at 795 Columbus Avenue, New York, NY 10025.  It is organized under the laws of the State of Delaware and has an address for service of process located at CT Corporation System, 28 Liberty St., New York, NY 10005.

13.     Defendant Columbus Square 801 LLC is UDR's operating company for the building it owns at 801 Columbus Avenue, New York, NY 10025.  It is organized under the laws of the State of Delaware and has an address for service of process located at CT Corporation System, 28 Liberty St., New York, NY 10005.

14.     Defendant Columbus Square 805 LLC is UDR's operating company for the building it owns at 805 Columbus Avenue, New York, NY 10025.  It is organized under the laws

---

[1] https://www.udr.com/why-choose-udr-apartments/

of the State of Delaware and has an address for service of process located at CT Corporation System, 28 Liberty St., New York, NY 10005.

## **FACTUAL ALLEGATIONS**

15.     Columbus Square is a complex of five luxury apartment buildings located on Columbus Avenue on Manhattan's Upper West Side in the vicinity of 100th Street. It represents itself thusly on UDR's website:

| STUDIO - 4 BEDROOMS | STARTING AT $3,962 |

## COLUMBUS SQUARE: LUXURY APARTMENTS ON THE UPPER WEST SIDE

Located in one of the most sought after and timeless neighborhoods in New York City, Columbus Square luxury apartments feature stunning Central Park views, stainless steel appliances, hardwood flooring, and floor-to-ceiling windows. Enjoy a wealth of stylish amenities, including a rooftop lounge, state-of-the-art fitness center, gorgeous lap pool, concierge and valet services, and 24/7 door attendants. What's more, when you choose to rent one of our apartments, you enjoy the benefits of a no-fee apartment search and do not have to work with a broker. *Check availability and pricing* for these Upper West Side apartments.

https://www.udr.com/new-york-city-apartments/upper-west-side/columbus-square/

## FROM THE EXPANSIVE VIEWS TO THE SMALLEST OF DETAILS, LUXURY EXEMPLIFIED

Wake up with the sun as it streams in through floor-to-ceiling windows. Come alive with your first morning coffee gazing out over Central Park or the Hudson River. Perched at your breakfast bar, take in the stainless steel appliances, Italian porcelain flooring, stone countertops and Fisher & Paykel fridge —life is just fine, thank you. Later on, trade laps with a friend in the 70 ft. heated lap pool, then stroll outside for a turn around the elevated, third floor outdoor lounge and greenway gardens. With 24-hour doorman, concierge, and valet services, and a lengthy list of other thoughtful community and apartment amenities, Columbus Square makes appreciating a life of luxury a daily occurrence.

https://www.udr.com/new-york-city-apartments/upper-west-side/columbus-square/amenities/

16.     Residents of Columbus Square pay substantial rent in exchange for these promised benefits. Columbus Square offers studios starting at $3,962/month, 1-bedrooms starting at

$4,607month, 2-bedrooms starting at $6,131/month, 3-bedrooms starting at $9,999, and 4-bedrooms for an amount so extravagant that it is not disclosed on Defendants' website.[2]

17.     One of the promised benefits at Columbus Circle is a 70-foot, 3-lane lap pool. Defendants represent the pool on their website through the following three images:



---

[2]   https://www.udr.com/new-york-city-apartments/upper-west-side/columbus-square/apartments-pricing/?beds=4





https://www.udr.com/new-york-city-apartments/upper-west-side/columbus-square/amenities/#/?i=164486

18.     In conjunction with Defendants' invitation to "trade laps with a friend in the 70 ft. heated lap pool," these images suggest to the reasonable consumer of luxury apartments that the pool is readily available for residents' use during all hours when a swimming pool could reasonably be expected to remain open.

19.     The expectation that residents have full access to the pool is corroborated by Defendants' express representations.  The UDR website states the pool's hours of availability as follows:

**POOL**

| | |
|---|---|
| Pool Hours | Sunday 7:00 AM - 8:00 PM<br>Monday 6:00 AM - 10:00 PM<br>Tuesday 6:00 AM - 10:00 PM<br>Wednesday 6:00 AM - 10:00 PM<br>Thursday 6:00 AM - 10:00 PM<br>Friday 6:00 AM - 10:00 PM<br>Saturday 7:00 AM - 8:00 PM |
| Is the Pool open year-round? | Yes |

https://www.udr.com/new-york-city-apartments/upper-west-side/columbus square/faq/community-amenities/

     20.     These representations are mirrored in signage in the 808 Columbus Avenue building where the pool is located:



21.    However, residents of Columbus Square have discovered that they cannot, in fact, utilize the pool during all these hours.  For Defendants have posted another, small-print sign that residents can see only after they move in and that drastically restricts their enjoyment of the pool:



22.     Thus, the pool is not at all accessible to residents between 10:00 am and 6:00 pm Monday through Friday and on Saturday and Sunday between 9:00 am and 1:00 pm. Most residents do not even see this sign and learn of their highly limited access to the pool only when they attempt to use the pool, observe the SwimJim children taking lessons, and are then told that the pool is off-limits to residents.

23.     Prior to the Pandemic in March 2020, Defendants would always keep at least one lane open for access by residents, even when the pool was otherwise being used for swimming lessons. Now, however, Defendants do not even attempt to maintain the normal business hours listed on their website.  And even before the Pandemic, residents would not learn of their limited access to the pool until after moving into their apartments and observing that only one lane was available to them during daytime hours.

24.     Residents of Columbus Square might wonder who "SwimJim" is to dictate when they may use their own pool. Were they to venture to SwimJim's website for its New York City operations, they would see the following:



https://swimjim.com/swimming-lessons-new-york-city/

25.     As is betrayed by the Greco-Roman wall tiling, this is the very pool located at 808 Columbus Avenue, which, it turns out, is being employed by SwimJim as a venue for its own commercial operations—giving swimming lessons to New York City children.

26.     Utilizing the pool for outside swimming lessons is a breach of Plaintiff's and Class members' contracts with Defendants, as these contracts make no provision for the renting out of the pool to third parties at residents' expense.  Attached hereto as **Exhibit A** are the relevant pages from the two leases Plaintiff signed with Defendants.  These sections of the lease address proper swimming pool behavior and etiquette, but they say nothing that would suggest to a reasonable person that Defendants will restrict residents' access to the pool so they can rent it out to third-party swimming instruction companies.

27.     The same is true of the "Welcome Package" Plaintiff received from Defendants, relevant excerpts of which are attached as **Exhibit B**. These materials represent that the pool "is open daily from 6am to 10pm" and refer to SwimJim simply as the pool's "operator," not as a swimming instruction business that has been authorized to exclude residents from the pool in furtherance of its commercial operations.  The "Columbus Square Pool Rules" state that the pool manager may close the pool for reasons of "safety or maintenance," not to give swimming lessons to nonresidents. The Rules' closing exhortation to "Enjoy your day at the pool!" also communicates that residents will have unhindered daylong access to the pool.

28.     Defendants' side hustle with SwimJim has therefore deprived Plaintiff and Class members of the benefits of the contractual agreement the parties reached when they signed leases. It may be understandable that SwimJim would seek to reserve most of the pool's daytime hours for its own purposes, as the daytime (and especially 3:00-6:00 pm) is when children's swimming

lessons customarily take place.  But this ignores the needs of child residents of Columbus Square, who wish to use the pool during the customary time for afterschool sports, 3:00-6:00 pm.

29.     Moreover, Defendants cannot reasonably assume that adult residents of Columbus Circle will not want to use the pool during daytime hours.  As shown by Columbus Square rents (starting at around $4,000 for a studio), the complex's residents are high-income professionals who will often have the freedom to set their own working hours and/or work from home (because of Covid or any number of other reasons). A resident who happens to be working from home may well wish to swim a few laps in the middle of the afternoon rather than wait until 6:00 pm once the pool gets too crowded (an eventuality that Defendants' restrictions on the morning and afternoon use of the pool make more likely). Class members who signed leases with Defendants reasonably believed that they were paying for this freedom and flexibility. Defendants' policies have also harmed residents who would ordinarily use the pool during the narrow windows Defendants have dictated, since the pool will inevitably become more crowded as a result of those policies.

30.     Defendants' side hustle with SwimJim also violates the consumer fraud laws of New York State. Defendants' false representation that the pool would be readily available to residents would be material to, and be relied upon by, a reasonable consumer of luxury apartments. Plaintiff and the Class did not know, and had no reason to know, that Defendants would be renting out their pool to make some extra cash, as this is not indicated anywhere on Defendants' website or in the leases.  Even if Defendants had not made an express false representation, reasonable consumers would not expect a luxury apartment complex to conduct itself in this way.

31.     Plaintiff and Class members would not have been willing to enter into leases with Defendants at the given rental rates had they been aware of Defendants' deceptive practices.  The

possibility that some Columbus Square residents may have chosen to renew leases even after becoming aware of those practices does not change this, as moving apartments entails financial and other costs that would have outweighed the continuing injury wrought by Defendants' deceptive practices.

## **DAMAGES AND OTHER RELIEF**

32.     The precise extent of Plaintiff's and Class members' injuries will be determined through expert analysis at trial, but it is already clear that Defendants have injured each Class member in the amount of thousands of dollars for each year they leased apartments from Defendants.

33.     The value of a swimming pool membership—and hence the extent of Plaintiff's and Class members' injuries—is substantial. For example, **Exhibit C** displays the pool membership rates for the Manhattan Park Pool Club, which for most individuals is $600/month or $800/season (it is an outdoor pool, so the seasonal rate covers only a few months of the year).  The value of unrestricted access to the Columbus Square pool for Columbus Square residents is doubtless even higher, since (1) the Columbus Square pool is 70' whereas Manhattan Park is only 60'; (2) Manhattan Park is on Roosevelt Island whereas Columbus Square is in Manhattan; (3) Columbus Square residents can access their pool without traveling to another building or neighborhood (when it is actually open to them); and (4) the Columbus Square pool is advertised as open for longer hours (on weekdays, opening at 6:00 am rather than 9:15 am and closing at 10:00 pm rather than 7:45 pm).  In depriving Plaintiff and Class members of free access, Defendants have substantially diminished the value of the pool for Plaintiff and Class members notwithstanding that this value was an element of their bargain with Defendants.

14

34.     Since the value of a private pool membership in New York City is at least $600 a month, Defendants are liable to each Columbus Square resident for at least $600 for each month the resident resided at Columbus Square while SwimJim was conducting its operations (with appropriate interest).[3] Since each Columbus Square building houses hundreds of residents, Defendants' total liability to the Class easily reaches millions, if not tens of millions, of dollars over the six-year limitations period for breach of contract.

35.     In addition, equity requires that all earnings Defendants have received from their agreement with SwimJim be disgorged and remitted to Defendants' victims. Equity also requires that the Court enjoin Defendants to terminate that agreement and make the pool available to residents during all normal pool hours.

36.     Defendants are also liable to Plaintiff and Class members for attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings claims for relief for Defendants' unlawful acts pursuant to Fed. R. Civ. P. 23 on behalf of himself and all persons with Columbus Square leases on or after the date that is six years before the filing of this Complaint ("the Class").[4]

---

[3] While the Manhattan Park Pool Club does offer a discount for a seasonal membership, this is not an option at most swimming pools, particularly indoor ones that are open year-round. And, as discussed, the Columbus Square pool offers the significant advantage of being located in one's residence rather than Roosevelt Island.  Thus, $600 monthly is a conservative estimate of the value of the Columbus Square pool for Columbus Square residents—especially in light of the fact that most Columbus Square residents are busy professionals who may not have the time to travel 30-40 minutes to a swim club but would be able to squeeze in a swim at the Columbus Square pool. This promised benefit was highly material to their decision to rent apartments are the rates set by Defendants, because time is money for busy professionals.

[4] Defendants represent on their website that the pool is accessible only to residents of 808 Columbus Avenue.  However, Plaintiff knows from personal experience and his direct interactions with Columbus Square residents in other buildings that it is accessible to them as well.  While only current and former leaseholders are Class members, they are owed damages based on the number

38.     Class members are readily ascertainable. Since they are all residents of Columbus Square, their identity is readily determinable from the records of Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

39.     The proposed Class is so numerous that a joinder of all members is impracticable, and the collective disposition of their claims will benefit the parties and the Court. Since Columbus Square contains hundreds of units, the numerosity requirement for class certification is readily met.

40.     Plaintiff's claims are typical of claims that could be asserted by all Class members. The relief sought by Plaintiff is typical of the relief that would be sought by all Class members.

41.     All Class members were subject to the same unfair and unlawful practices of Defendants, as alleged herein—being denied access to the pool notwithstanding their contractual agreement with Defendants and reasonable expectations as consumers.

42.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in class action litigation.

43.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual

---

of residents in their apartment, as discussed above, since other residents' access to the pool was part of the bargain Class members entered into in signing leases.

litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Class members would create a risk of inconsistent and/or varying adjudications, establishing incompatible standards of conduct for Defendants. The issues in this action can be decided by means of common, class-wide proof, since all Class members agreed to the same lease terms and were exposed to the same representations in being induced to sign their leases. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

44.    This case presents common questions of law and fact that allow for common answers that readily predominate over individual issues. The only individual issue implicated in this case is the amount of time Class members had leases with Defendants, which will affect the extent of their injuries, but courts in New York have uniformly held that such differences are not a bar to class certification.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought individually and on behalf of the Class)**

45.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

46.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

47.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." (internal citations omitted)).

48.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful acts and practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated the law. The court may award reasonable attorneys' fees to a prevailing plaintiff.

49.     The practices employed by Defendants, whereby they advertise, promote, and market their Columbus Square apartments, are unfair, deceptive, misleading, and in violation of the NY GBL § 349.

50.     These practices are directed at consumers, since "§349 has been applied to the landlord-tenant relationship, both residential and commercial." *Purmil Co., LLC v. Chuk Dey India Too, Inc.*, 867 N.Y.S.2d 377, 377, 2008 NY Slip Op 51766(U), 8-9 (Dist. Ct. of NY., 1st Dist., Nassau Cty Aug. 21, 2008).

51.     Defendants' conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

52.     Defendants' actions impact the public interest because Plaintiff was injured in exactly the same way as many others who leased apartments from Defendants.

53.     Defendants' deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, inflated rent payments based on representations that Defendants failed to make good on. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate. Damages can be calculated through expert testimony at trial.

54.     Furthermore, Defendants should be enjoined from continuing to rent out the Columbus Square pool to SwimJim or any other third party.

**COUNT II**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
(FALSE ADVERTISING LAW)**

**(brought individually and on behalf of the Class)**

55.     Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

56.     Defendants have been and/or are engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

57.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account the

extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

58.    Defendants caused to be disseminated throughout New York advertising and marketing that were untrue and/or misleading.

59.    Defendants' representations to prospective apartment renters are substantially uniform in content and presentation. Consumers considering renting a Columbus Square apartment continue to be exposed to Defendants' material deceptions.

60.    Defendants have violated N.Y. Gen. Bus. Law § 350 because their description of the pool's availability to Columbus Square residents is likely to deceive a reasonable consumer.

61.    Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising.

62.    Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiff and Class members seek all applicable monetary damages, including actual, statutory, and punitive damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT III

## COMMON LAW FRAUD

### (brought individually and on behalf of the Class)

63.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

64.    Defendants intentionally make materially false and misleading representations regarding the accessibility of the Columbus Square pool.

65.     Plaintiff and Class members reasonably relied on Defendants' false and misleading representations. They did not know, and had no reason to know, that the Columbus Square pool would not be made available to them during all normal operating hours.  They would not have leased their apartments at the given rates had they known the truth.

66.     Defendants knew and intended that Plaintiff and the Class members would rely on their misrepresentations of the pool's availability.

67.     Plaintiff and Class members have been injured as a result of Defendants' fraudulent conduct.

68.     Defendants are liable to Plaintiff and Class members for damages sustained as a result of Defendants' fraud.

## COUNT IV

## BREACH OF CONTRACT

### (brought indiviudally and on behalf of the Class)

69.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows:

70.     When they signed leases with Defendants, Plaintiff and Class members were promised that the Columbus Square pool would be accessible by them during all normal pool operating hours. This promise was part of the consideration for Plaintiff's and Class members' promises to pay rent.

71.     "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits

of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

72.     Even if Defendants did not expressly promise that the pool would not be rented out to third-party swimming instruction businesses, Plaintiff and Class members reasonably understood full access to the pool to be among the "fruits of the[ir] contract" with Defendants. Defendants breached this contract when they deprived Plaintiff and Class members of such access.

73.     As a result, Plaintiff and Class members were damaged in an amount to be determined by expert analysis at trial.

## COUNT V

## UNJUST ENRICHMENT

### (brought individually and on behalf of the Class)

74.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

75.     To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

76.     Defendant was enriched when it received additional revenues by renting out the Columbus Square pool to SwimJim. These revenues came at the expense of Plaintiff and the Class, who were deprived of access to the pool as a result. It is against equity and good conscience to

allow Defendants to retain the revenues, since Defendants were essentially selling to SlimJim something that belonged to Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

    a.   An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Class;

    b.   An Order appointing the undersigned attorney as Class Counsel in this action;

    c.   Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

    d.   All recoverable compensatory and punitive damages sustained by Plaintiff and Class members;

    e.   Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

    f.   An order requiring Defendants to immediately cease their wrongful conduct and make the pool available exclusively to Plaintiff and Class members;

    g.   Statutory pre-judgment and post-judgment interest on any amounts;

    h.   Payment of reasonable attorneys' fees and costs; and

    i.   Such other relief as the Court may deem just and proper.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff, on behalf of herself and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.


Dated: January 19, 2022

Respectfully submitted,


By: _____*/s/ Rony Guldmann*_____
      Rony Guldmann, Esq.

**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com
*Attorneys for Plaintiff and the Class*