**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

C.K. LEE, *individually,* COURTNEY MCPHAIL
*on behalf of herself and others similarly situated*,

          Plaintiffs,

          v .

UDR, INC., COLUMBUS SQUARE 808, LLC,
COLUMBUS SQUARE 795, LLC, COLUMBUS
SQUARE 775, LLC, COLUMBUS SQUARE 801,
LLC, and COLUMBUS SQUARE 805, LLC,

          Defendants.

---

Case No.: 1:22-cv-00505

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

 

**INGRAM YUZEK GAINEN CARROLL &**
**BERTOLOTTI, LLP**
150 East 42nd Street, 19th Floor
New York, New York  10017
(212) 907-9600
*Attorneys for Defendants*
*UDR, Inc., Columbus Square 808, LLC,*
*Columbus Square 795, LLC, Columbus*
*Square 775, LLC, Columbus Square 801,*
*LLC and Columbus Square 805, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ....................................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .................................................................................................3

ARGUMENT

I. PLAINTIFFS FAILED TO STATE CLAIMS FOR BREACH OF
   CONTRACT OR BREACH OF THE IMPLIED DUTY OF GOOD
   FAITH AND FAIR DEALING

    A.   Plaintiffs' Breach Of Contract Claim Is Barred Under The Lease ...................................6

    B.   Dismissal Is Warranted Because The Amended Complaint Fails
   To Allege Defendants' Breach Of Any Particular Lease Provision ...............................8

    C.   Any Claim For Breach Of Implied Covenant Of Good Faith
   And Fair Dealing Should Be Dismissed.............................................................9

II. THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR
    VIOLATIONS OF THE NEW YORK GENERAL BUSINESS
    LAW §§ 349 AND 350 ...........................................................................12

    A.   Plaintiffs Fail To Allege A Deceptive Act Or Practice
   That has A Broad Impact On The Public At Large ........................................12

    B.   Plaintiffs Fail To Allege That Defendants' Purported
   Conduct is materially misleading.................................................................14

        1.  The Alleged Representations Would Not Have Mislead
     A Reasonable Consumer .........................................................................14

        2.  Plaintiffs were previously informed of the allegedly
     Deceptive conduct ..................................................................................15

    C.   Plaintiffs Fail To Allege A Cognizable Injury ..............................................18

III. PLAINTIFFS' CLAIMS FOR COMMON LAW FRAUD AND
     UNJUST ENRICHMENT SHOULD BE DISMISSED ........................................19

A.  Plaintiffs' Fraud Claim Is Duplicative Of Their Breach
Of Their Breach Of Contract Of Claim ........................................................19

B.  Plaintiffs Do Not Plead The Requisite Elements Of
A Common Law Fraud Claim .......................................................................20

C.  Plaintiffs' Unjust Enrichment Claim Should Be Dismissed ...........................22

IV. THE DEFENDANTS ALLEGED TO OPERATE BUILDINGS
OTHER THAN 808 COLUMBUS SHOULD BE DISMISSED FROM
THE ACTION .......................................................................................................22

CONCLUSION ...............................................................................................................25

706949_1/03565-0005

### TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*2 Broadway L.L.C. v. Credit Suisse First Bos. Mortg. Cap. L.L.C.,*
   2001 WL 410074 (S.D.N.Y. Apr. 23, 2001)............................................................................8

*511 West 232nd Owners Corp. v. Jennifer Realty Co.,*
   98 N.Y.2d 144 (2002) ......................................................................................................10

*A.N.R. Inv. Co. v. HSBC Priv. Bank,*
   135 A.D.3d 632 (1st Dep't 2016) .......................................................................................7

*Atl. Recording Corp. v. Project Playlist, Inc.,*
   603 F. Supp. 2d 690 (S.D.N.Y. 2009)................................................................................23

*Baron v. Pfizer, Inc.,*
   42 A.D.3d 627 (3d Dep't 2007) .......................................................................................18

*Berman v. Sugo LLC,*
   580 F. Supp. 2d 191 (S.D.N.Y. 2008)................................................................................24

*Bezuszka v. L.A. Models, Inc.,*
   2006 WL 770526 (S.D.N.Y. Mar. 24, 2006) .....................................................................19

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
   98 F.3d 13 (2d Cir. 1996).................................................................................................20

*Burton v. Label, LLC,*
   344 F. Supp. 3d 680 (S.D.N.Y. 2018)................................................................................17

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002)..........................................................................................6 n.4

*Cue Fashions, Inc. v. LJS Distribution, Inc.,*
   807 F. Supp. 334 (S.D.N.Y. 1992) .................................................................................6 n.4

*Delgado v. Ocwen Loan Servicing,* LLC,
   2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ..................................................................16

*Derbaremdiker v. Applebee's Int'l, Inc.,*
   2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012),
   *aff'd,* 519 F. App'x 77 (2d Cir. 2013) ..............................................................................20

*Devlin v. 645 First Ave. Manhattan Co.,*
   229 A.D.2d 343 (1st Dep't 1996) .....................................................................................13

iii

*Dimond v. Darden Restaurants, Inc.,*
2014 WL 3377105 (S.D.N.Y. July 9, 2014) ........................................................................17

*Druyan v. Jagger,*
508 F. Supp. 2d 228 (S.D.N.Y. 2007)..................................................................................19

*Ferguson v. Lion Holding, Inc.,*
478 F. Supp. 2d 455 (S.D.N.Y. 2007),
*clarified on denial of reconsideration,* 2007 WL 2265579 (S.D.N.Y. Aug. 6, 2007).............10

*Fink v. Time Warner Cable,*
714 F.3d 739 (2d Cir. 2013)................................................................................................14

*Goldberg v. Manufacturers Life Ins. Co.,*
242 A.D.2d 175 (1st Dep't 1998) .........................................................................................8

*Goldberg v. Pace Univ.,*
535 F. Supp. 3d 180 (S.D.N.Y. 2021)..................................................................................22

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,*
8 F. Supp. 3d 467 (S.D.N.Y. 2014) .....................................................................................22

*Goldman v. Belden,*
754 F.2d 1059 (2d Cir. 1985)........................................................................................6 n.4

*Goureau v. Lemonis,*
2021 WL 4847073 (S.D.N.Y. Oct. 15, 2021) ......................................................................10

*Nelson v. MillerCoors, LLC,*
246 F. Supp. 3d 666 (E.D.N.Y. 2017) .................................................................................12

*New World Sols., Inc. v. NameMedia Inc.,*
150 F. Supp. 3d 287 (S.D.N.Y. 2015)..................................................................................12

*New York Univ. v. Cont'l Ins. Co.,*
87 N.Y.2d 308 (1995) ...................................................................................................12-13

*Obra Pia Ltd. v. Seagrape Invs. LLC,*
2020 WL 5751195 (S.D.N.Y. Sept. 25, 2020),
*appeal dismissed* (June 17, 2021), *motion for relief from judgment denied,*
2021 WL 1978545 (S.D.N.Y. May 18, 2021) ........................................................................7

*P&G Auditors & Consultants, LLC v. Mega Int'l Com. Bank Co.,*
2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019).....................................................................24

iv

*Papa's-June Music, Inc. v. McLean,*
  921 F. Supp. 1154 (S.D.N.Y.1996)........................................................................19

*Rapson Investments LLC v. 48 East 22nd Street Property LLC,*
  2019 WL 1179438 (Sup. Ct. New York County. Mar. 11, 2019),
  *aff'd,* 180 A.D.3d 614 (1st Dep't 2020)...............................................................10

*Reznick v. Bluegreen Resorts Mgmt., Inc.,*
  154 A.D.3d 891 (2d Dep't 2017) .........................................................................25

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.,*
  75 F.3d 801 (2d Cir. 1996).................................................................................21

*Sands v. Ticketmaster–New York,*
  207 A.D.2d 687 (N.Y. App. Div. 1st Dep't 1994) ...............................................16

*Silvester v. Selene Fin., LP,*
  2019 WL 1316475 (S.D.N.Y. Mar. 21, 2019) .....................................................12

*Simon v. Castello,*
  172 F.R.D. 103 (S.D.N.Y.1997) .........................................................................21

*Small v. Lorillard Tobacco Co.,*
  94 N.Y.2d 43 (N.Y.1999) ...................................................................................18

*Sokoloff v. Town Sports Int'l Inc.,*
  6 A.D.3d 185 (1st Dep't 2004) ...........................................................................25

*Spandex House, Inc. v. Travelers Prop. Cas. Co. of Am.,*
  2015 WL 509678 (S.D.N.Y. Feb. 6, 2015)...........................................................11

*Stoltz v. Fage Dairy Processing Indus., S.A.,*
  2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ...................................................16

*Swan Media Grp., Inc. v. Staub,*
  841 F. Supp. 2d 804 (S.D.N.Y. 2012)...........................................................6, 8, 9

*Thompson v. Parkchester Apartments Co.,*
  271 A.D.2d 311 (1st Dep't 2000) .......................................................................13

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.,*
  41 F.3d 1570 (2d Cir. 1994)...........................................................................11 n.5

*Veneto Hotel & Casino, S.A. v. German Am. Capital Corp.,*
  160 A.D.3d 451 (1st Dep't 2018) .......................................................................11

v

*Washington v. Kellwood Co.,*
  2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ..........................................................................12

**Rules and Statutes**

Fed. R. Civ. P. 9(b) ...........................................................................................................20

New York General Business Law §§ 349 and 350 ...............................................1, 7, 18-21, 23-25

706949_1/03565-0005

## PRELIMINARY STATEMENT

This action is a straightforward landlord/tenant dispute governed by the unambiguous terms of the relevant lease agreements.  Plaintiffs assert they were injured because defendants limited use of the swimming pool in the building in which they rent apartments to only certain hours of the day.  But their leases specifically permit the landlord to set the hours for swimming pool usage.  In fact, the Community Policies, Rules And Regulations Addendum of each of their leases provides that the landlord/owner may "set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Tenant."

Plaintiffs do not cite to any provision of the Columbus 808 Lease in to support their specious allegation that defendants breached the agreement by restricting the accessibility of the swimming pool.  And to the extent plaintiffs assert a claim against defendants for breach of implied covenant of good faith and fair dealing, that claim too is unavailing.  Where, as here, a contract endows a party with "sole and absolute discretion" with respect to a particular matter, an exercise of that discretion cannot constitute a breach of the duty of good faith and fair dealing—no matter how unfavorable the result may seem.  In any event, upon signing their respective leases, plaintiffs agreed to waive all claims of any kind against the landlord/owner relating to use of the swimming pool.  These clear and unambiguous provisions in their leases bar plaintiffs' breach of contract and unjust enrichment claims as a matter of law.

Plaintiffs' NYGBL §§ 349 and 350 claims are equally deficient.  While such claims must involve conduct that has a broader impact on consumers at large, plaintiffs' allegations concerning the swimming pool solely affect residents of the building located at 808 Columbus Avenue.  Also,

1

prior to renting their apartments, plaintiffs were informed that the days and hours of use for all building amenities, including the swimming pool, were subject to change at the discretion of the landlord.  Plaintiffs cannot credibly allege they were misled to believe that the swimming pool would, as suggested in paragraph 20 of the amended complaint, be "readily available for residents' use during all hours when a swimming pool could reasonably be expected to remain open." Particularly so given that plaintiffs expressly consented to the landlord's authority to control the character and accessibility of the swimming pool.

Plaintiffs' common law fraud claim is similarly unviable and should be dismissed.  The fraud claim is duplicative of plaintiff's breach of contract claim.  Also, the amended complaint's vague allegations fail to adequately plead the mandatory elements of a fraud claim, let alone with any requisite particularity.

Plaintiffs' attempt to plead an unjust enrichment claims is likewise deficient. Their lease agreements are enforceable contracts that squarely govern plaintiffs' use and access to the swimming pool, which is the subject matter of the instant action.

Finally, plaintiffs' allegations have nothing to do with defendants Columbus Square 775 LLC, Columbus Square 795 LLC, Columbus Square 801 LLC and Columbus Square 805 LLC— entities plaintiffs allege in paragraphs 12 through 16 of the amended complaint are "operating companies" only for buildings located at 775, 795, 801 and 805 Columbus Avenue respectively. As more fully set forth below, documentary evidence that is incorporated by reference into the amended complaint or otherwise integral to plaintiffs' claims dispositively shows that the swimming pool is only available to residents of the building located at 808 Columbus Avenue, and not to residents of the apartment buildings located at 775, 795, 801, and 805 Columbus Avenue. Accordingly, the issues at hand in the amended complaint do not involve these entities and all

claims asserted against Columbus Square 775 LLC, Columbus Square 795 LLC, Columbus Square 801 LLC and Columbus Square 805 LLC should therefore be dismissed.

For these, and other reasons set forth below, the amended complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

The facts are set forth in the amended complaint dated May 27, 2022 (the "Amended Complaint"), as well as in the documentary evidence annexed to the Amended Complaint or incorporated thereto by reference and annexed to the affidavit of Jennifer B. Zourigui, sworn to June 30, 2022 ("Zourigui Aff."). The facts therein relevant to the instant motion are set forth below.

On or around May 26, 2020, class representative Courtney McPhail ("McPhail"), as tenant, entered into a lease (the "McPhail Lease") with landlord/owner Columbus Square 808 LLC ("Columbus 808") to rent an apartment in the building located at 808 Columbus Avenue, New York, New York (the "Building"). (Zourigui Aff, Ex. 2.) Individual plaintiff C.K. Lee ("Lee") as tenant, likewise entered into a lease with Columbus 808 to rent an apartment in the Building on or around April 30, 2018 (the "Lee Lease"). (Zourigui Aff, Ex. 3.) Lee entered into a second lease with Columbus 808 on or around November 17, 2021 (the "Second Lee Lease," and collectively with the McPhail Lease and Lee Lease, the "808 Columbus Lease" ).[1] (Zourigui Aff., Ex. 4.)

---

[1] Because the page numbers of the Columbus 808 Lease are not consecutive, we deem the first "Preferential Rent Rider" page of Exhibits 2 and 4, following the numbered exhibit page tab, to be p. 1. We also deem the first "New York Rent Stabilization, Apartment Lease" page of Exhibit 3, following the numbered exhibit page tab, to be p. 1.

The Columbus 808 Lease includes, as "part of th[e] Lease,"[2] a Community Policies, Rules And Regulations Addendum  (the "Lease Addendum"), pursuant to which tenants of the Building are permitted to use certain amenities and recreational facilities.[3]  (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I.)   One of the amenities available to the Building's residents is a seventy-foot, three lane lap swimming pool. (Zourigui Aff., Ex. 1, ¶ 19.)

The Lease provides:

> Tenant(s) permission for use of all common areas, Tenant amenities, and recreational facilities (together, "Amenities") located at the Dwelling Community is a privilege and license granted by Owner, and not a contractual right except as otherwise provided for in the Lease.  Such permission is expressly conditioned upon Tenant's adherence to the terms of the Lease, this Addendum, and the Community rules and regulations ("Rules") in effect at any given time, and such permission may be revoked by Owner at any time for any lawful reason. In all cases, the most strict terms of either the Lease, Addendum, or the Communities Rules shall control. Owner reserves the right to set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Tenant. Owner and management may make changes to the Rules for use of any Amenity at any time.  (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I.)

The swimming pool is only available to residents of the Building, and not to residents of the apartment buildings located at 775, 795, 801, and 805 Columbus Avenue (collectively, the "Other Buildings"). (Zourigui Aff., Exs. 5-9.)

The Building is operated by defendant Columbus 808. (Zourigui Aff., Exhibit 1, ¶ 12.) The Other Buildings are operated by defendants Columbus Square 775 LLC, Columbus Square

---

[2] The Columbus 808 Lease provides "You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. ***Our rules are considered part of this Lease***." (Zourigui Aff., Ex. 2, p. 4 ¶ 18, Ex. 3, p. 2, ¶ 18, and Ex. 4, p. 4, ¶ 19 (emphasis added).)

[3] The relevant terms of the Lee Lease, Second Lee Lease, and McPhail Lease Addenda are substantively identical to each other.  Indeed, the Amended Complaint alleges "all Class Members agreed to the same lease terms." (Zourigui Aff., Ex. 1, ¶ 45.)

795 LLC, Columbus Square 801 LLC, Columbus Square 805 LLC, and UDR, Inc. ("UDR", and collectively with Columbus Square 775 LLC, Columbus Square 795 LLC, Columbus Square 801 LLC, Columbus Square 805 LLC, and Columbus 808, the "Defendants"). (*Id.*, ¶¶ 13-16.)

Columbus 808 licensed the swimming pool to SWIMJIM, INC. ("SwimJim"), which provides children's swimming lessons. (Id., ¶ 27.) Prior to the COVID-19 pandemic, residents of the Building were permitted to swim in at least one lane when SwimJim used the swimming pool. (Id., ¶ 25.) Sometime after the pandemic, Columbus 808 made the swimming pool exclusively available for SwimJim's use during certain hours of the day. (*Id.*, ¶ 25.) McPhail, who signed the McPhail Lease on or around May 26, 2020—after these restrictions on swimming pool hours, as described in the Amended Complaint, were in effect—continues to reside in the Building even though the original term of the McPhail Lease expired on June 27, 2021. (Zourigui Aff., Ex. 1, ¶ 9 and Ex. 2, p. 2, ¶ 3.) Lee—who was a tenant of the Building before these restrictions, as alleged in the Amended Complaint, were in place—signed the Second Lee Lease in November 2021 *after* such restrictions on pool hours were in effect. (Zourigui Aff., Ex. 3, p. 1, ¶ 3 and Ex. 4, p. 2, ¶ 3.)

On January 19, 2022, Lee brought a complaint against Defendants on behalf of himself and an alleged class. The Amended Complaint was filed on May 27, 2022, naming McPhail as a new class representative in place of Lee, who withdrew from the class but remained in the action to allege only individual claims against Defendants. (Zourigui Aff., Ex. 1.) The Amended Complaint is premised on Plaintiffs' assertion that Plaintiffs and class members were injured by Defendants because they limited usage of the swimming pool in the Building to only certain hours of the day. (*Id.*, ¶¶ 1-3.)

# ARGUMENT

## I.

## PLAINTIFFS FAILED TO STATE CLAIMS FOR BREACH OF CONTRACT OR BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

### A.     Plaintiffs' Breach Of Contract Claim Is Barred Under The Lease

In New York, "the elements of a breach of contract claim are (i) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citations omitted).  The allegations set forth in the Amended Complaint fail to satisfy these requisite elements.  (Zourigui Aff., Ex. 1, ¶¶ 71-75.)  Indeed, unambiguous provisions of the Columbus 808 Lease, the contract at issue in the Complaint,[4] not only fail to support, but *expressly preclude* Plaintiffs' breach of contract claim against Defendants.

The Addendum provides that "*Owner reserves the right to set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of*

---

[4] "[A] Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed.R.Civ.P. 10(c), or any document incorporated in it by reference." *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir. 1985).  Here, Plaintiffs annex portions of the Lee Lease and the Second Lee Lease as Exhibit A to the Amended Complaint, and as the contract at issue in the Amended Complaint, incorporate the Lee Lease and Second Lee Lease in their entirety by reference.  *Cue Fashions, Inc. v. LJS Distribution, Inc.,* 807 F. Supp. 334, 335–36 (S.D.N.Y. 1992) ("When deciding a dispositive motion on the pleadings of a contract claim, this Court. . . found that the pertinent contract, although outside the pleadings, was incorporated into the complaint by reference").  Likewise, this Court should consider McPhail's Lease while determining Defendants' motion to dismiss because it is integral to the Amended Complaint; McPhail "relies heavily upon [the McPhail Lease's] terms and effect" when asserting her breach of contract claim against Defendants. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (citations omitted). (*See, e.g.* Zourigui Aff., Ex. 1, ¶¶ 28, 30-33, 72.)  Accordingly, it is appropriate for this Court to consider these documents in its analyses of Defendants' motion.

706949_1/03565-0005

*any nature to Tenant.*" (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I (emphasis added).)  Thus, Plaintiffs consented when they signed the Columbus 808 Lease to 808 Columbus determining pool hours in its "sole and absolute discretion," and cannot now complain that the pool is not available to them "during all normal operating hours." (Zourigui Aff., Ex. 1, ¶ 70.)  *See A.N.R. Inv. Co. v. HSBC Priv. Bank*, 135 A.D.3d 632, 633 (1st Dep't 2016) ("The cause of action for breach of contract must be dismissed because the terms and conditions that plaintiffs signed when they opened their accounts at HSBC explicitly authorized the conduct of which plaintiffs complain in this action"); *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-CV-7840 (RA), 2020 WL 5751195, at *15 (S.D.N.Y. Sept. 25, 2020), *appeal dismissed* (June 17, 2021), *motion for relief from judgment denied,* No. 19-CV-7840 (RA), 2021 WL 1978545 (S.D.N.Y. May 18, 2021) ("Because Plaintiffs' breach of contract claim is based on Defendants' taking allegedly wrongful actions prior to the Senior Loan being repaid in full…and nothing in the Subordination Agreement actually prohibits Defendants from having done so, Plaintiffs have not sufficiently pled that Defendants breached the Subordination Agreement").

Furthermore, the Columbus 808 Lease provides "Tenants and guests will adhere to the rules and regulations posted in the pool area and Management policies."  (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ II, and Ex. 3, p. 17, ¶ II.)  Plaintiffs therefore agreed to "adhere" to "Management policies" concerning the "pool area", which include the hours that the swimming pool is available for tenants' use.  (*Id*.)  For this reason too, Plaintiffs' breach of contract claim should be dismissed.

Plaintiffs also expressly agreed to release and waive any claims related to use of the swimming pool.  The Columbus 808 Lease provides:

**Additionally, Tenant(s) expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity except for landlord's negligence, related to Tenant's use of the amenities at the Community. Tenant(s) agrees to hold Owner harmless and release and waive any and all claims, allegations, actions, damages, losses, or liabilities of every type, whether or not foreseeable, that Tenant(s) may have against Owner and that are in any way related to or arise from such use. This provision shall be enforceable to the fullest extent of the law.** (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I (emphasis in original).)

Under this clear language, Plaintiffs are barred from bringing *any claim*—breach of contract or otherwise—that relates to or arises from use of the swimming pool. In view of Plaintiffs' signed release and waiver of "any and all claims, allegations, actions, damages, losses, or liabilities of every type" that relate to or arise from swimming pool usage, *each of Plaintiffs' claims*, including the claim for breach of contract, should be dismissed. Because this release and waiver provision is unambiguous on its face, this Court should honor the contracting parties' intent and dismiss the Amended Complaint in its entirety. *See 2 Broadway L.L.C. v. Credit Suisse First Bos. Mortg. Cap. L.L.C.,* No. 00 CIV. 5773 GEL, 2001 WL 410074, at *6 (S.D.N.Y. Apr. 23, 2001) ("It is appropriate to grant a motion to dismiss on the basis of a binding release agreement where, as here, the terms of the agreement are clear and unambiguous"); *Goldberg v. Manufacturers Life Ins. Co.,* 242 A.D.2d 175, 181 (1st Dep't 1998) ("Because we find this language [of the release agreement] to be clear and unambiguous on its face, the expressed intent will be given effect").

**B.  Dismissal Is Warranted Because The Amended Complaint Fails To Allege Defendants' Breach Of Any Particular Lease Provision**

Plaintiffs fail to allege Defendants' breach of any particular provision of the Columbus 808 Lease, which is fatal to their breach of contract claim. (Zourigui Aff., Ex. 1, ¶¶ 71-75.) The court in *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012), reached a similar

conclusion. There, the *Staub* court dismissed a breach of contract claim in which the complaint made only the conclusory allegation that "'Defendant, by refusing to comply with its obligations, has breached the Agreement.'" *Id.* The *Staub* court determined that the complaint did "not specify which clause of the Agreement Defendant is alleged to have breached" and reasoned that "[t]hough the Court must accept the factual allegations of a complaint as true and draw all inferences in the pleader's favor, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (citations omitted.) The *Staub* court thus concluded "[h]ere, [p]laintiff has not alleged sufficient facts to nudge its claims across the line." *Id.*

Similar to the breach of contract claim at issue in *Staub*, Plaintiffs' breach of contract claim is supported by the conclusory allegation that "Plaintiffs and Class members were promised that the Columbus Square pool would be accessible by them during all normal operating hours." (Zourigui Aff., Ex. 1, ¶ 72.) Like the plaintiff in *Staub*, Plaintiffs' bald allegation fails to refer to any specific provisions of the Columbus 808 Lease that Defendants purportedly breached. *See Staub*, 841 F. Supp. 2d at 807. To be sure, Plaintiffs *cannot* allege that Defendants breached any particular provisions of the 808 Columbus Lease, which expressly authorizes Defendants "*to set the days and hours of use for all Amenities*." (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I (emphasis added).) Plaintiffs' breach of contract claim should therefore be dismissed.

### C.   Any Claim For Breach Of Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed

To the extent Plaintiffs allege a claim for breach of the implied covenant of good faith and fair dealing, this claim too should be dismissed. The Amended Complaint's assertion that "Plaintiffs and Class members reasonably understood full access to the pool to be among the 'fruits of the[ir] contract' with Defendants," is contradicted by the plain terms of the Columbus 808 Lease, in which owner reserves the right "to set the days and hours of use for all Amenities and to

9

change the character of or close any Amenity based upon the needs of Owner and in Owner's *sole and absolute discretion*, without notice, obligation or recompense of any nature to Tenant." (Zourigui Aff., Ex. 1, ¶ 74, Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I (emphasis added).)  Because "no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship,'" any claim for breach of the implied covenant of good faith and fair dealing should be dismissed.  *Ferguson v. Lion Holding, Inc.,* 478 F. Supp. 2d 455, 469 (S.D.N.Y. 2007), *clarified on denial of reconsideration*, No. 02 CIV 4258 PKL, 2007 WL 2265579 (S.D.N.Y. Aug. 6, 2007).

It is true that while the duties of good faith and fair dealing do not imply obligations 'inconsistent with other terms of the contractual relationship'… they do encompass 'any promises which a reasonable person in the position of the promisee would be justified in understanding were included'"  *See, e.g. 511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144 (2002). However, here, no reasonable resident who reviewed and signed the Columbus 808 Lease would be justified in understanding that Defendants agreed to keep the swimming pool accessible to residents during *all* hours a swimming pool could be expected to remain open.  Such a self-serving perspective renders the landlord's right to set hours meaningless.  *See Rapson Investments LLC v. 48 East 22nd Street Property LLC*, 2019 WL 1179438, *9 (Sup. Ct. New York County Mar. 11, 2019), *aff'd*, 180 A.D.3d 614 (1st Dep't 2020) ("[T]he covenant of good faith and fair dealing cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights") (citations omitted).

It also follows that where, as here, a contract gives a party absolute discretion with respect to a particular matter, an exercise of that discretion cannot constitute a breach of the duty of good faith and fair dealing – no matter how unfair the result may seem.  *See, e.g., Goureau v. Lemonis*, No. 1:20-CV-04691, 2021 WL 4847073, at *7 (S.D.N.Y. Oct. 15, 2021) ("Where, as here, the

plain language of the agreement provides that a party may act in its 'sole and absolute discretion,'… the implied covenant of good faith and fair dealing may not be used to read into the contract that which is not there"); *Veneto Hotel & Casino, S.A. v. German Am. Capital Corp.*, 160 A.D.3d 451, 452 (1st Dep't 2018) ("As the implied covenant of good faith and fair dealing 'cannot negate express provisions of the agreement, nor is it violated where the contract terms unambiguously afford [a party] the right to exercise its absolute discretion,' Veneto's implied covenant claim also cannot stand") (citations omitted).   Because the Columbus 808 Lease expressly affords the owner the sole and absolute discretion to control the days, hours, character, and accessibility of the swimming pool, "the implied covenant [of good faith and fair dealing] cannot alter the plain language" of the parties' agreement.[5]  *Goureau,* 2021 WL 4847073, at *7.

Additionally, "Plaintiffs have not identified conduct beyond that which allegedly constituted a breach of the contract, in support of its claim for breach of the implied duty of good faith and fair dealing."  *Spandex House, Inc. v. Travelers Prop. Cas. Co. of Am.,* No. 14 CIV. 4251 PAC, 2015 WL 509678, at *2 (S.D.N.Y. Feb. 6, 2015).  Rather, Plaintiffs' claim for breach of the duty of good faith and fair dealing relies entirely on the same obligations they allege were breached in their contract claims—that Defendants purportedly promised Plaintiffs that they would have full access to the swimming pool and then later denied that access.  (*See* Zourigui Aff, Ex. 1, ¶ 74.) Any claim for breach of the implied covenant of good faith and fair dealing should therefore be dismissed, as this claim "relies entirely on the same obligations [Plaintiff] alleges were breached

---

[5] The Second Circuit's determination in *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1575 (2d Cir. 1994) is not to the contrary, as this decision stands for the unremarkable proposition that a party's exercise of discretion under an agreement cannot contravene its contractual obligations or implied duty of good faith.

11

in its contract claims." *Washington v. Kellwood Co.,* No. 05 CIV. 10034 (DAB), 2009 WL 855652, at *7 (S.D.N.Y. Mar. 24, 2009).

## II.

## THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS
## FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350

As set forth below, Plaintiffs fail to sufficiently allege *any* of the required elements of a claim brought under New York General Business Law ("NYGBL") §§ 349 or 350. Because Plaintiffs fails to show that Defendants' alleged acts were directed at consumers, were materially misleading, or caused Plaintiffs actual injury, this Court should dismiss these causes of action.

### A.   Plaintiffs Fail To Allege A Deceptive Act Or Practice
### That Has A Broad Impact On The Public At Large

"The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *New World Sols., Inc. v. NameMedia Inc.,* 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015). "To establish a *prima facie* case under either section 349 or 350, 'a plaintiff must demonstrate that '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Nelson v. MillerCoors, LLC,* 246 F. Supp. 3d 666, 673–74 (E.D.N.Y. 2017). Furthermore, a successful claim for a consumer-oriented deception turns on whether a plaintiff can allege "that the disputed acts or practices 'have a broader impact on consumers at large.'" *Silvester v. Selene Fin., LP,* No. 7:18-CV-02425 (NSR), 2019 WL 1316475, at *9 (S.D.N.Y. Mar. 21, 2019) (citations omitted).

As a threshold matter, Plaintiffs' claims under NYGBL §§ 349 and 350 should be dismissed because these claims concern a private dispute specific to the parties. *See New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 320 (1995) ("[p]rivate contract disputes unique to the

12

parties ... would not fall within the ambit of [NYGBL § 349]") (citations omitted).  Any dispute over the availability of the swimming pool uniquely affects Building residents and not the greater public, which does not have permission to access Building amenities.  New York courts have reached similar conclusions when deciding disputes involving residential buildings.  For example, in *Thompson v. Parkchester Apartments Co.,* 271 A.D.2d 311, 311 (1st Dep't 2000), plaintiffs sued the owner of an apartment complex, alleging that the materials distributed in connection with the purchase of condominiums "contained false information regarding the condition of the plumbing."  *Id.* The court held that plaintiffs failed to allege a viable claim under NYGBL § 349, "since they have not met the threshold requirement for such a claim by showing that the alleged deceptive acts, if permitted to continue, would have a broad impact on consumers at large."  *Id.* The court concluded "[t]he presently litigated dispute, involving faulty plumbing and what the individual plaintiffs were told about the condition of the plumbing when they purchased their individual units, is unique to the parties at this particular complex, and thus, does not fall within the ambit of the statute." *Id* at 311-312.  The court in *Devlin v. 645 First Ave. Manhattan Co.,* 229 A.D.2d 343, 343 (1st Dep't 1996), reached a similar result.  The plaintiff in *Devlin* sought redress against sponsors of a condominium for defects in their apartment building as well as their individual unit. *Id.* The court concluded that the plaintiff failed assert a viable claim under NYGBL §349 because "the requisite broad impact on consumers at large is not evident." *Id.* at 344.  So too here.  Plaintiffs' allegation that tenants have been denied access to the Building swimming pool fails to broadly impact the public at large, and thus neither NYGBL § 349 nor § 350 apply to the instant dispute.

**B.    Plaintiffs Fail To Allege That Defendants'**
<u>**Purported Conduct Is Materially Misleading**</u>

As set forth below, Plaintiffs' NYGBL § 349 and § 350 claims are unviable because they

fail to allege conduct that is materially misleading.  First, the "misrepresentations" described in

the Amended Complaint would not have mislead a reasonable consumer.  Furthermore, Plaintiffs

were informed that Defendants had absolute discretion to control the accessibility and character of

the swimming pool before they entered in the Columbus 808 Lease.

**1.    <u>The Alleged Representations Would Not Have Misled A Reasonable Consumer</u>**

In order for a defendant's conduct to be "materially misleading" under NYGBL §§ 349 and

350, the alleged representations must be likely to mislead a reasonable consumer acting reasonably

under the circumstances.  *Silvester v. Selene Fin., LP,* 2019 WL 1316475, at *9 (citations omitted).

"It is well settled that a court may determine as a matter of law that an allegedly deceptive practice

would not have misled a reasonable consumer."  *Fink v. Time Warner Cable,* 714 F.3d 739, 741

(2d Cir. 2013).  Plaintiffs' NYGBL §§ 349 and 350 claims are deficient because the representations

described in the Complaint are not false or materially misleading on their face.  The website images

that Plaintiffs allege are deceptive actually depict the "70 ft. heated lap pool" that is accessible to

Plaintiffs and other Building residents during certain periods of the day.  (Zourigui Aff., Ex. 1, ¶¶

19-20).  There is no cognizable claim under NYGBL §§ 349 or 350 because "[P]laintiff[s] received

exactly what was represented to [them]"—permission to use that swimming pool during hours set

by the landlord.  *Derbaremdiker v. Applebee's Int'l, Inc.,* No. 12-CV-01058 KAM, 2012 WL

4482057, at *5 (E.D.N.Y. Sept. 26, 2012), *aff'd*, 519 F. App'x 77 (2d Cir. 2013).

Plaintiffs nonetheless attempt to characterize the website's images and descriptions of the

swimming pool as deceptive in the Amended Complaint.  Plaintiffs allege that "[i]n conjunction

with Defendants' invitation to 'trade laps with a friend in the 70 ft. heated lap pool,' these images

suggest to the reasonable consumer of luxury apartments that the pool is readily available for residents' use during all hours when a swimming pool could reasonably be expected to remain open." (Zourigui Aff., Ex. 1, ¶ 20).  Plaintiffs' conclusory assertion is materially inconsistent with the images shown in the complaint, which simply feature the swimming pool itself and are silent as to it being "readily available for residents' use during all hours." (*Id.*)  Accordingly, Plaintiffs' NYGBL § 349 and § 350 claim should not survive Defendant's motion to dismiss. *See Fink*, 714 F.3d at 742 ("Here, the allegations of the Complaint are materially inconsistent with the sole advertisement Plaintiffs have submitted. We therefore easily conclude that Plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss").

### 2. <u>Plaintiffs Were Previously Informed Of The Allegedly Deceptive Conduct</u>

Plaintiffs' NYGBL § 349 and § 350  claims fail because prior to renting the apartment, Plaintiffs were informed that the days and hours of use for all building amenities, including the swimming pool, were subject to change at the discretion of Columbus  Square  808  LLC.  "New York courts have dismissed claims for having failed to satisfy [the materially misleading] element where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to the plaintiff." *Derbaremdiker*, 2012 WL 4482057, at *4 (collecting cases).  Here, the Columbus 808 Lease unambiguously provides that "*Owner reserves the right to set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Tenant.*"  (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I (emphasis added).)  Plaintiffs consented to these terms prior to agreeing to rent their apartments in the Building, and had the opportunity to refrain from renting their apartments if they did not agree.  Because there can be no NYGBL §§ 349 and 350 claims when the allegedly deceptive

practice was fully disclosed, these causes of action should be dismissed on this basis as well.  *See Sands v. Ticketmaster–New York,* 207 A.D.2d 687, 616 N.Y.S.2d 362, 363 (N.Y. App. Div. 1st Dep't 1994) (finding that allegedly excessive ticket fees were not materially misleading where those fees were fully disclosed prior to the sale of the tickets); *see also Derbaremdiker*, 2012 WL 4482057, at *5 (determining that statement made on a receipt concerning sweepstakes "was not materially misleading to a reasonable consumer acting reasonably" when considered with full disclosures and rules that appeared on defendant's website).

Plaintiffs fare no better under a "net impression" theory.  *See, e.g. Delgado v. Ocwen Loan Servicing*, LLC, No. 13-CV-4427 NGG RML, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) ("[a] solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures"); *Stoltz v. Fage Dairy Processing Indus., S.A.,* No. 14-CV-3826 MKB, 2015 WL 5579872, at *16 (E.D.N.Y. Sept. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement").  This proposition is inapplicable here as Plaintiffs are unable to show that Defendants created any such "net impression" that was likely to mislead residents.  *Delgado,* 2014 WL 4773991, at *8.  Based on Plaintiffs' allegations and the terms of the 808 Columbus Lease: Defendants advertised the swimming pool to prospective Building residents on the UDR website, the Defendants entered into leases giving 808 Columbus absolute and sole discretion to set the hours, and Defendants and other residents of the Building are able to access the same pool that was advertised during certain hours of the day set by 808 Columbus.  (Zourigui Aff., Ex. 1, ¶¶ 19, 23-25, Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I.) Based on these facts, Plaintiffs cannot plausibly assert that, despite clear disclosures about the pool

hours, Defendants created a misleading "net impression" concerning the swimming pool's accessibility. *Delgado,* 2014 WL 4773991, at *8.

The court's decision in *Dimond v. Darden Restaurants, Inc.,* No. 13 CIV. 5244 KPF, 2014 WL 3377105 (S.D.N.Y. July 9, 2014), instructs. There, plaintiff asserted, among other things, that a defendant restaurant's imposition of an 18% gratuity was deceptive. *Id.* at *8. The *Dimond* court determined that the plaintiff failed to allege a materially misleading act or practice under NYGBL § 349 because the terms and conditions of the restaurant's gratuity policy were conspicuously disclosed on the menu. *Id.* The *Dimond* court concluded:

> Here, the terms and conditions were completely and conspicuously indicated on the menu so that each patron was expressly informed as to the cost of dining at the Restaurants prior to voluntarily placing his or her order. Plaintiff, as well as any other customer, had the option of leaving the restaurant upon seeing this disclosure. That social norms may make a person feel uncomfortable in such a situation does not result in a GBL § 349 violation. *Id.*

So too here. Prior to renting their apartments, Plaintiffs were informed that the days and hours of use for all building amenities, including the swimming pool, were subject to change at the Columbus Square 808 LLC's sole and absolute discretion. Despite this disclosure, which Plaintiffs were obligated to read, Plaintiffs elected to rent their apartments. *See Burton v. Label, LLC,* 344 F. Supp. 3d 680, 693 (S.D.N.Y. 2018) ("Under New York law, 'a party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents.'") Plaintiffs even chose to continue to reside in their apartments after the initial terms of the McPhail Lease and Lee Lease expired. (Zourigui Aff., Ex. 1, ¶ 9, Ex. p. 2, ¶ 3, and Ex. 3, p. 1, ¶ 3.) Accordingly, Plaintiffs' NYGBL §§ 349 and 350 claims should be dismissed.

17

### C.  **Plaintiffs Fail To Allege A Cognizable Injury**

Plaintiffs' NYGBL §§ 349 and 350 claims should also be dismissed because Plaintiffs have failed to sufficiently allege injury.  A plaintiff's injury under NYGBL §§ 349 and 350 will not be cognizable unless he or she "sets forth deception as both act and injury."  *Derbaremdiker*, 2012 WL 4482057, at *7; *Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 51, 56, (N.Y.1999) (dismissing NYGBL §349 claim where plaintiffs sought "reimbursement of the purchase cost of cigarettes that they claimed they would not have bought, but for defendants' fraudulent and deceptive practices," because this theory of harm "contain[ed] no manifestation of either pecuniary or 'actual' harm").  Here, Plaintiffs fail to allege any actual harm under NYGBL §§ 349 or 350. Plaintiffs' assertion that "Plaintiffs and Class members would not have been willing to enter into leases with Defendants at the given rental rates had they been aware of Defendants' deceptive practices" does not allege an actual harm separate from Defendants' alleged misrepresentations. (Zourigui Aff., Ex. 1, ¶33.)  *See Baron v. Pfizer, Inc.,* 42 A.D.3d 627, 629 (3d Dep't 2007) (dismissing Section 349 claim where plaintiff sought "a refund of the purchase price of [a prescription drug] on the ground that she would not have purchased the drug absent defendant's deceptive practices"); *Dimond* at *9 ("Just because plaintiff purchased goods that he might not have otherwise purchased does not constitute actual harm, since such a theory improperly 'sets forth deception as both act and injury") (citations omitted).

Plaintiffs' attempt to equate his damages with the value of a private pool membership in New York City also fails, as Plaintiffs still cannot demonstrate any actual losses they incurred as a result of Defendants' alleged conduct.  (Zourigui Aff., Ex. 1, ¶¶ 35-36.)  To be sure, Plaintiffs have access to the swimming pool represented on the Building's website and have been able to use this amenity in accordance with Building rules.  Plaintiffs have therefore failed to allege sufficient

injury under NYGBL §§ 349 or 350. *See Sokoloff v. Town Sports Int'l Inc.,* 6 A.D.3d 185, 186, (1st Dep't 2004) (determining that plaintiff failed to allege a cognizable injury against her health club because, among other reasons, plaintiff did not claim that the health club failed to deliver services called for under the contract).

For these reasons, Plaintiffs' NYGBL §§ 349 and 350 claims should be dismissed.

### III.

### PLAINTIFFS' CLAIMS FOR COMMON LAW FRAUD<br>AND UNJUST ENRICHMENT SHOULD BE DISMISSED

As explained below, Plaintiffs' common law fraud and unjust enrichment causes of action are deficient. Plaintiff's common law fraud claim should be dismissed because it is duplicative of their breach of contract claim and because Plaintiffs fail to allege the necessary elements of fraud with requisite particularity. Additionally, Plaintiffs' unjust enrichment claim fails because an enforceable contract—the Columbus 808 Lease- governs the same subject matter of this claim.

### A.   Plaintiffs' Fraud Claim Is Duplicative Of Their Breach Of Contract Claim

The Amended Complaint fails to allege that Defendants have a duty to Plaintiffs that is extraneous to, or distinct from, the Columbus 808 Lease. *Druyan v. Jagger,* 508 F. Supp. 2d 228, 239 (S.D.N.Y. 2007). To establish fraud under New York law, a plaintiff must show that the defendant made a material false representation, the defendant intended to defraud the plaintiff thereby, the plaintiff reasonably relied upon the representation, and the plaintiff suffered damage as a result of such reliance. *Bezuszka v. L.A. Models, Inc.,* No. 04 CIV. 7703 (NRB), 2006 WL 770526, at *12 (S.D.N.Y. Mar. 24, 2006) (citations omitted). A fraud claim must also be "sufficiently distinct from the breach of contract claim," *Papa's-June Music, Inc. v. McLean,* 921 F. Supp. 1154, 1162 (S.D.N.Y.1996), and "a contract claim cannot be converted into a fraud claim by the addition of an allegation that the promisor intended not to perform when he made the

promise." *Id.* at 1160 (collecting cases); *Bezuszka,* 2006 WL 770526 at \*12.  "It is axiomatic that a plaintiff cannot plead a fraud claim based on the same facts that underlie her breach of contract claim unless [he or she] (i) demonstrates a legal duty separate from the duty to perform under the contract; (ii) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Druyan*, 508 F. Supp. 2d at 239.  Plaintiffs' fraud claim against Defendants falls into none of these narrow exceptions.

The Amended Complaint fails to allege that Defendants' purported "misrepresentations" related to swimming pool accessibility are "extraneous to", or "distinct from" the Columbus 808 Lease.  *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir. 1996).  Rather, the 808 Columbus Lease explicitly authorizes the owner to set the days and hours of use for all amenities.  (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I.)  For this reason, Plaintiffs' common law fraud claim should be dismissed as duplicative of their breach of contract claim. *See Druyan*, 508 F. Supp. at 239 ("Plaintiff likewise cannot claim that the sole "misrepresentation" she alleges—that defendants continued to advertise that the "concert would take place" after they learned that it would in [f]act be cancelled…was collateral or extraneous to two separate contracts that provide explicitly for the possibility of rescheduling").  Finally, Plaintiffs fail to allege an entitlement to special damages.  The damages Plaintiffs allege for Defendants' purported misrepresentations "are precisely the damages contemplated by [their] contract with [Columbus 808], and that contract explicitly precludes their recovery." *Id.* at 239.

**B.  <u>Plaintiffs Do Not Plead The Requisite Elements Of A Common Law Fraud Claim</u>**

Plaintiffs' common law fraud claim is deficient because the Amended Complaint fails to plead mandatory elements of this cause of action with requisite particularity.  Fed. R. Civ. P. 9(b).

The Amended Complaint does not adequately allege reasonable reliance upon any of Defendants' purported misrepresentations. The Columbus 808 Lease unequivocally allows the landlord to set and modify the days and hours and for the swimming pool.  (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I.) Plaintiffs had no reasonable basis to believe that residents would unconditionally have "full access" to the swimming pool or that the landlord could not "restrict residents' access to the pool so they can rent it out to third-party swimming instruction companies." (Zourigui Aff., Ex. 1, ¶¶ 21, 28.)  *See Druyan* at 240 ("[Plaintiff] claims only that she relied on Ticketmaster's representations that the Concert would take place as scheduled… Yet that reliance was necessarily misplaced given Ticketmaster's clear and consistent contractual warnings to the plaintiff that the Concert's timing was subject to change").

Additionally, the Amended Complaint is silent as to whether Defendants had motive or opportunity to commit any purported fraud, and fails to allege any specific facts that give rise to a "strong inference" of fraudulent intent or provide "strong circumstantial evidence of conscious misbehavior." *Id.* at 241. The Amended Complaint consists of the conclusory allegation that "Defendants knew and intended that Plaintiffs and the Class members would rely on their misrepresentations of the pool's availability." (Zourigui Aff., Ex. 1, ¶ 68.)  This bare assertion is insufficient to survive a motion to dismiss.  *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.,* 75 F.3d 801, 813 (2d Cir. 1996) ("Plaintiffs do not, however, enjoy a 'license to base claims of fraud on speculation and conclusory allegations'") (citations omitted).

Furthermore, where multiple Defendants are alleged to have committed fraud, a complaint must "'allege specifically the fraud perpetrated by each defendant.'" *Druyan v. Jagger,* 508 F. Supp. 2d at 242  (citing *Simon v. Castello,* 172 F.R.D. 103, 106 (S.D.N.Y.1997)).  Yet Plaintiffs

fail to allege what *each* Defendant did in furtherance of the purportedly fraudulent scheme to mislead residents about swimming pool availability. "This omission is significant, because it makes it nearly impossible for the [C]ourt to discern which of the [D]efendants…are responsible for making the alleged 'misrepresentations.'" *Druyan,* 508 F. Supp. 2d at 242.

For these reasons, Plaintiffs' fraud claim should be dismissed.

### C.  Plaintiffs' Unjust Enrichment Claim Should Be Dismissed

Dismissal of Plaintiff's unjust enrichment claim is similarly appropriate here. To establish unjust enrichment, a plaintiff must show that the defendant was enriched, at the plaintiff's expense, and equity and good conscience requires restitution for what the plaintiff seeks to recover. *Goldberg v. Pace Univ.,* 535 F. Supp. 3d 180, 198 (S.D.N.Y. 2021). "Under New York law, a plaintiff may not recover under quasi-contract claims such as unjust enrichment where an enforceable contract governs the same subject matter." *Id.; Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (unjust enrichment claim "not available where it simply duplicates, or replaces, a conventional contract or tort claim") (internal citations omitted).  Here, the enforceable Columbus 808 Lease governs the parties' dispute and directly covers Plaintiffs' access to the Building's swimming pool.  (Zourigui Aff., Exs. 2, and 4, p. 23, ¶ I, and Ex. 3, p. 17, ¶ I.)  As an "enforceable contract" squarely governs the subject matter of Plaintiff's unjust enrichment claim, this claim should be dismissed.  *See Goldberg,* 535 F. Supp. 3d at 198.

### IV.

### THE DEFENDANTS ALLEGED TO OPERATE BUILDINGS OTHER THAN 808 COLUMBUS SHOULD BE DISMISSED FROM THE ACTION

The Amended Complaint should, in any event, be dismissed in its entirety as to defendants Columbus Square 775 LLC, Columbus Square 795 LLC, Columbus Square 801 LLC and

Columbus Square 805 LLC. Plaintiffs alleges that all residents of Columbus Square, which encompasses all five buildings, were defrauded by an unfulfilled promise to full access to the swimming pool located in the Building.  (Zourigui Aff., Ex. 1, ¶¶ 1, 3, and 39 n.4.)

In the Amended Complaint, Plaintiffs rely on representations made on defendant UDR's website, incorporating it by reference, and including various screenshots, but conveniently do not include the portions of the website that indicate in multiple locations that the swimming pool is "available to residents of 808 only" and that "[e]ach building at Columbus Square has its own set of amenities. Residents will only have access to the building in which they reside." (Zourigui Aff., Ex. 5.)  "Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss."  *Atl. Recording Corp. v. Project Playlist, Inc.,* 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009) (citations omitted).

Each Addendum of the Columbus Square 775 LLC, Columbus Square 795 LLC, Columbus Square 801 LLC and Columbus Square 805 LLC lease also shows that residents of the Other Buildings are *not* entitled to access the swimming pool.[6] (Zourigui Aff., Ex. 6-9, p. 1, ¶ 2.)  As indicated on the first page of each Addendum, the Other Buildings "DO[] NOT have a pool" and the swimming pool at is issue is thus not included among the Other Buildings' amenities. (Zourigui Aff., Ex. 6-9, p. 1, ¶ 2 (emphasis in original).)

Similarly to UDR's website, this Court should consider the Other Building's Addendum in its analysis of Defendants' motion to dismiss. These documents are "integral" to the class allegations set forth in the Amended Complaint, as Plaintiffs rely heavily upon their "terms and effect" when asserting a breach of contract claim on behalf of members of the prospective class

---

[6] Each Addendum of the Other Buildings' leases are substantively identical to one another and as a result, the first pages of Defendant's Exhibits 6-9 have the identical terms concerning amenities.

who reside in the Other Buildings. *Chambers*, 282 F.3d at 153.  (citations omitted). (Zourigui Aff., Ex. 1, ¶¶ 1, 3, 39-46, and 72.)  Indeed, the Amended Complaint alleges "all Class Members agreed to the same lease terms" and that "Class Members . . . are owed damages . . . since other residents' access to the pool was part of the bargain Class members entered into in signing leases." (*Id.*, Ex. 1, ¶¶ 39 n.4 and 45.)

Accordingly, given these clear indications that the swimming pool is for "residents of 808" only, (Zourigui Aff., Exs. 5-9), Plaintiff's allegations have *nothing* to do with the residents of the Other Buildings or defendants Columbus Square 775 LLC, Columbus Square 795 LLC, Columbus Square 801 LLC and Columbus Square 805 LLC—entities Plaintiffs allege are "operating companies" only for buildings located at 775, 795, 801 and 805 Columbus Avenue respectively. (*See* Zourigui Aff., Ex. 1,  ¶¶ 12-16.)

Plaintiffs acknowledge that "Defendants represent on their website that the pool is accessible only to residents of 808 Columbus Avenue," but vaguely assert, "from personal experience and [] direct interactions with Columbus Square residents in other buildings that it is accessible to them as well."  (Zourigui Aff., Ex. 1, ¶ 39 n.4.)  Plaintiff's bald allegations, which fail to cite any particular contractual provisions, are insufficient to establish that residents of the Other Buildings had any bargained-for right to access the swimming pool.  *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract"); *P&G Auditors & Consultants, LLC v. Mega Int'l Com. Bank Co.*, No. 18-CV-9232 (JPO), 2019 WL 4805862, at *5 (S.D.N.Y. Sept. 30, 2019) ("the bare assertion that Mega 'consented' within the meaning of the contract is precisely the kind of 'legal conclusion[ ] masquerading as factual' allegation that courts must disregard when deciding a motion to dismiss under Rule 12(b)(6)"); *Reznick v.*

*Bluegreen Resorts Mgmt., Inc.,* 154 A.D.3d 891, 893 (2d Dep't 2017) ("'In order to state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of the contract that were breached'…vague allegations suggesting that there may have been an agreement do not suffice") (citations omitted).  Because the Amended Complaint fails to adequately allege that residents of the Other Buildings were entitled to access the Building's swimming pool, defendants Columbus Square 775 LLC, Columbus Square 795 LLC, Columbus Square 801 LLC and Columbus Square 805 LLC should be dismissed from this action.

Accordingly, all claims asserted against these four defendants should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant its motion and dismiss the Amended Complaint in its entirety.

Dated: New York, New York
     June 30, 2022

                       **INGRAM YUZEK GAINEN CARROLL**
                       **& BERTOLOTTI, LLP**

                       By: *Jennifer Zourigui*
                            Jennifer B. Zourigui
                            Amanda B. Grannis
                       150 East 42nd Street, 19th Floor
                       New York, New York, 10017
                       (212) 907-9600
                       jzourigui@ingramllp.com
                       agrannis@ingramllp.com

706949_1/03565-0005